J-S09037-22

2022 PA Super 71

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHARLES DAVIS | : | |
| | : | |
| Appellant | : | No. 1049 EDA 2021 |

Appeal from the Judgment of Sentence Entered April 29, 2021
In the Court of Common Pleas of Pike County Criminal Division at No(s):  CP-52-CR-0000014-2020

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                    **FILED APRIL 20, 2022**

Appellant, Charles Davis, appeals from the judgment of sentence entered in the Court of Common Pleas of Pike County following his conviction by a jury on the charge of driving while under the influence of alcohol ("DUI")-high rate of alcohol 4th offense or subsequent, 75 Pa.C.S.A. § 3802(B).[1]  After a careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Based on the record from the jury trial, the trial court convicted Appellant of the following offenses: registration and certificate of title required, operation following suspension requirement, driving while operating privileges suspended or revoked, required financial responsibility, driving on roadways laned for travel, duty of driver on approach of emergency vehicle, driving vehicle at safe speed, careless driving, and reckless driving. 75 Pa.C.S.A. §§ 1301(a), 1371(a), 1543(b), 1786(f), 3309(1), 3325(a), 3361, 3714(a), and 3736(a), respectively.

The relevant facts and procedural history are as follows: On March 2, 2020, the Commonwealth filed an Information charging Appellant with numerous offenses in connection with driving while under the influence of alcohol on March 23, 2019. Appellant, who was represented by counsel, proceeded to a jury trial on November 12, 2020.

Prior to the selection of the jury, defense counsel noted this "is going to be the first jury that is selected in Pike County after the whole Covid [pandemic[2]] started.  In other words, nobody else [has] picked a jury here." N.T., 11/12/20, jury selection, at 37 (footnote added). Accordingly, outside the presence of the prospective jurors, defense counsel informed the trial court that Appellant had questions about the court procedures, which would be used in response to the Covid-19 pandemic.  Specifically, the following relevant exchange occurred in the trial court's chamber:

> [DEFENSE COUNSEL]: Next Your Honor, we have questions.  My first question is where would the jurors be deliberating? Once the jurors are picked and this goes to a deliberation where are they going to be deliberating?
>
> THE COURT: In the main Courtroom.
>
> [DEFENSE COUNSEL]: So, my second question is as I understand it the jurors are going to be in the gallery in the first three rows of the gallery?

_____

[2] The global COVID-19 pandemic resulted from the spread of a virus known as SARS-CoV-2, commonly known as coronavirus, which causes the disease known as COVID-19.

THE COURT: [C]onceivably yes, but conceivably they can walk around in the gallery area.

[DEFENSE COUNSEL]: And some of those jurors during the Trial are going to be behind my back, is that—am I correct in that Your Honor?

THE COURT: Well, I think to the side.

[DEFENSE COUNSEL]: Well, if where my table is and where the jurors are going to be sitting [is] in that second part of the gallery, they are going to be behind my back, and I am not going to be able to see them.

THE COURT: I would say they are to your side. That would be my belief. You could angle your chair and be to the side. It would be more, there would be more of an issue for the Commonwealth I think from where their table is positioned.

[DEFENSE COUNSEL]: In all fairness[,] I think for both of us Your Honor.

THE COURT: It may be both.

[DEFENSE COUNSEL]: If I'm in my chair and I have a witness, and the witness is going to be sitting where the jury used to sit as I understand, now I'm not sitting up in front, so I'll be focusing on [*sic*]. So those jurors as I understand it are going to be up to a hundred feet away from the witness during the Trial.

THE COURT: I haven't measured it. You may be close to accurate.

[DEFENSE COUNSEL]: I just kind of paced it out. But it looks like about a hundred feet away from the jury, they are not going to be able to see. I'll get into my objection.

THE COURT: Okay. Well, we're doing the best we can with our Covid preparation, and you could note whatever of record in terms of if there is going [*sic*] any Appellate issues on it.

[DEFENSE COUNSEL]: Yes, Your Honor.

THE COURT: We're going to go forward with it, and we think we've made the best decision we can.

[DEFENSE COUNSEL]: Will the jurors, Your Honor, be provided with face shields or [will] they not be provided with face shields once we settle on fourteen?

THE COURT: Once we have the fourteen, I didn't envision requiring face shields, for the witnesses I think we did. We had planned on the witness, right or were we planning on the jurors also?

COURT ADMINISTRATOR: It was up to you, Your Honor. We did discuss the witness removing a homemade mask or wearing the shield. Whatever you are comfortable for our witness to testify. We do have face shields available for the jury panel if it was something that was requested and we would accommodate, but it would just depend on the fourteen and the motions of counsel.

THE COURT: I don't even envision the witness wearing a face shield if [*sic*] necessary.

[DEFENSE COUNSEL]: Your Honor, I would like to place my objections on the record.

THE COURT: Sure.

[DEFENSE COUNSEL]: First[,] Your Honor, if the jurors are wearing masks during jury selection and then during Trial, I'm going to be unable to see their facial expressions whatsoever, and in fact some of them will be sitting in the back of me, so I won't be able to see them anyway during Trial. If they are wearing these face masks and are seated in the gallery as opposed to our normal jury areas, again I won't be able to see their facial expressions whatsoever. I'll have no idea if they are sticking their tongue out at me when I ask a question, and that is an integral part of what happens in jury selection and during the Jury Trial because I'm able to see their faces to see how they're reacting to certain questions they are being asked; answers that are being asked during selection and Trial. Next, I have specific objections to where the jurors are sitting during jury selection because some of them are in the very back of the Courtroom. I can't even see their faces. So, even if they weren't wearing masks[,] I can't see their faces. I can't see their body language. I'm not even sure they are going to be able to hear me, hear my questions and how we're going to be able to do that, and once they're seated some of them are going to be up to potentially a hundred feet away from the witness, and I'll get into later how that's key but so, again when we are in a Trial we're not going to be able to see body language, facial expressions because they are so far away. That also goes into the fact that when they are so far away from the witness, they are not going to be able to see. They are the judges of

- 4 -

credibility. They are going to be judging the credibility of that witness, that goes to body language, that goes to facial expressions, it goes to minute changes in voice and details. They are not going to be able to see them[,] and I fear they are not going to be able to hear them very well, having been in this Courtroom very often and knowing that the people who are sitting back in the back can barely hear when people are on the witness stand. So, they as the judges of credibility are not going to be able to judge the credibility of the witness, to their body language and everything else, and they are going to be so far away they are not going to be able to see those minute changes.

We also have video and audio which is extremely important during this case and potentially exhibits, pictorial exhibits that are extremely important in this case. I don't see how in conjunction with that people sitting in the back row and third row normally are going to be ten feet away from the video screen or fifteen feet away from the video screen, and the speaker is right there, are going to be able to judge what is said on the video because some of this is very low murmuring voices [of] the trooper talking to my client. I don't see how they are actually even going to be able to see that whatsoever, and they're certainly not going to be able to judge again credibility, and I can't judge credibility for what's happening with the jurors at this point in time. So, while I appreciate the Court's attempting to do it's [*sic*] best to get the jurors in there and seated, I would suggest to the Court that had the Court put into place face masks; having the jurors not be wearing any kind of face masks on their face instead wear a clear plastic shield, at least we'll be able to see their faces at that point in time to be able to judge some of them. At the same time as I understand it, maybe the witness will be wearing some kind of plastic face shield, but again if they are a hundred feet away, I don't see how we're supposed to judge the credibility. Normally, they are ten to fifteen feet away from a witness. Credibility in this case is going to be a large issue, as well as the video in this case being a large issue, as well as the sound from the video being a large issue, the things that are said and done, and we just don't believe at this point in time that we're going to be able to do that with the jurors sitting where they are now going to be seated, in jury selection seated well over a hundred feet away from me. They are all in the back in the Courtroom wearing masks. We don't know how my client can get a fair and Constitutional verdict [with a] jury decision in this matter.

\*\*\*

I believe[,] Your Honor, with all of those objections on the record we're asking that we not hold this Trial under these circumstances.

THE COURT: Do you want to respond at all [Assistant District Attorney ("ADA")]?

[ADA]: Your Honor, it is my impression in the Commonwealth the Court has gone through a lot of planning in terms of socially distancing the jurors for the purpose of ensuring the safety of the jurors, and any concerns that may affect their going through the jury process. As I understand it, it's precisely what the Court was supposed to do throughout the State, keeping in mind the resources and layout of each individual County's Courtroom. You've done that. There have been several references, I just want to address one specific thing. There are several references that jurors are going to be more than a hundred feet away from a witness. I don't believe that's the case because once a jury is picked, they are going to be, as I understand[,] in the first three row[s] and they are not going to populate all the way back to the Courtroom. So, I don't believe there is ever going to be this circumstance where the jurors are a hundred feet away from the witness. If my memory serves me, I believe there's stereo equipment throughout the Courtroom that allows everyone to hear what's being played on the speakers. The Court in the past has developed a very large visual system with two very large monitors which allows all of the Courtroom to see what's on those monitors. So, it seems to the Commonwealth the Court has done precisely what it is supposed to do in relation to planning this and doing it in a way that's fair to all, keeping in mind the safety of the jurors.

THE COURT: Alright, the Defendant's objections are noted but overruled.

\*\*\*

Anything else that needs to be addressed counsel?

\*\*\*

[DEFENSE COUNSEL]: Well, I guess on the record too I have to ask this question is where am I limited on where I can stand in relation to a witness, am I limited in where I am allowed to stand in relation to the jurors?

- 6 -

THE COURT: Well, as far as the witness I would just ask that unless you have to approach and hand up an exhibit that you not get up near the witness chair. You know, it would be preferable [that] you'd be at the very least or at the very most at the podium, just because that has the microphone so that everyone can hear....

[DEFENSE COUNSEL]: The jurors[,] Your Honor, where am I? How close am I allowed to get? Am I allowed to—in other words, they are sitting back in the gallery am I allowed to go outside of the bench area?

THE COURT: Not outside of the bench bar area. There is no microphone. The reporter also needs to hear.

[DEFENSE COUNSEL]: And again, Your Honor, I'm specifically, I have to make that objection at this point in time that I am not able to do that. Understanding that the jury is sitting in an awkward area, I don't know how I am going to effectively communicate with them as I am doing this to be able to deal with issues. I am going to be severely limited on where I am going to be able to stand; where I am going to be able to walk; how I am going to be able to talk to the jury. I have to make that of record, Your Honor. I know the Court is trying to do what the Court can do in this situation. I think the Court is fully aware that I believe that it severely limits the defense in this case, and it severely limits the rights that my client has for me to be an effective advocate at this point in time, and I don't believe I can do so under these rules and regulations that you've put into place. I understand it's extraordinary circumstances with Covid, I think those extraordinary circumstances with Covid, particularly the numbers that are up in Pennsylvania right now, should cause this Trial to be continued so we could do so in a safe environment but also in a fair manner to my client. I need that on [the] record, Your Honor. I know you overruled me, but I have that of record.

THE COURT: Yes, it is on the record. Overruled.

N.T., 11/12/20, jury selection, 7-13, 15-16, 19-22.

Following the discussion in the trial court's chamber, the trial court conducted *voir dire* in the Courtroom. During *voir dire*, the following relevant exchange occurred:

THE COURT: The attorneys are going to have questions for you. Please listen to their questions carefully, and if you could also if you have to respond individually beyond raising your sign, your number sign, do your best to keep your voice up so our reporter can take down whatever answer you may be giving to the attorneys' questions.  Unlike us who are seated at tables and so forth, you don't have the benefit of a microphone, so we're not yet at the point in little old Pike County where we could put microphones on each of our jurors so, I will ask that you do the best you can and if we have to ask you to repeat your answer we will do that, and if you do have to stand up to answer a question if you feel that [is] more appropriate to do that, feel free to do so.  You're not required to, and the choice is yours as to you know everyone, I believe is wearing a mask and that's certainly your choice.  If you feel you have to take the mask off to answer the question, please do so but the main thing I want to do is just try to keep the distance we have right now in the Courtroom.  That's why we are not going to have you moving around, so if you do need to stand, please stand in the seat that you're in or in that area and remain in that area.

***

JUROR NO. 32: My question is in the jury room when we are discussing the evidence, are people going to be required to wear a mask?

THE COURT: Well, what we're going to do, normally our jury room is to my left down a hallway….[B]ut our intention is to have the jurors who are in the case deliberate in the Courtroom in the gallery so that you have the bigger, larger room to distance.  So, that is the intention[.]

[DEFENSE COUNSEL]: And I think the question was I believe Your Honor was is while they are deliberating are they going to have to wear masks?

THE COURT: I don't have, and I say as President Judge of the Court of Common Pleas, I have not imposed a mask mandate.  I know we've all dealt with it in different ways.  You see that I am not wearing one, however, I am not going to mandate [that] but I'm just going to ask [everyone] to be courteous and respectful because quite frankly if I wasn't so far away and someone had a concern about me not wearing a mask, I may very well wear one.  So, to me it really becomes just mutual respect to each other and that's why we wanted to do the breaks and the deliberations in the main Courtroom which is

much larger because it gives people who may be a little more worried about it, an ability to distance more then others. So, again ladies and gentlemen, I think it's really going to come down to the civility and mutual respect and common sense. So, again that is the best way I can explain it….Treat your fellow jurors as you would like to be treated yourself in other words.

*Id.* at 32-33, 43-45.

Thereafter, a prospective juror indicated "concerns" with the trial court not imposing a mask mandate. *Id.* at 45. In response, defense counsel addressed the prospective jurors during *voir dire* as follows:

[DEFENSE COUNSEL]: So, again we're living in a new world, and I'm sure we've all watched the TV, and we see all the numbers…going up and all these things happening. Do you think that's affected you in a way that would make it difficult for you to be a juror? Do you feel comfortable sitting in here during the day for at least a couple of days? Is that going to be a problem [with] all the things that we're seeing about all the numbers rising and all these things happening?

Okay folks, you're going to have to hold [your numbers] up because I'm going to take a while to write them down. I'm not very quick. So that is 1, 10, 20, 25, 40, 32, 17, 52, 28, did I get everybody? So that would be a problem for you sitting on the jury here today or when the jury is picked and being on that jury for the next couple of days because of what's happening and the world out there with the pandemic and all the numbers that are rising so quickly? So, all those people that I wrote those numbers down, is that the way you feel?....

So, I guess my last question is it's kind of like when you get married, speak now or forever hold your piece. Is there any other reason that you believe that you can't be a fair juror? This gentleman sitting to my right who deserves to have a fair jury, who constitutionally demands to have a fair jury. Is there anybody here that can't be a fair juror for any other reasons other than what we haven't already asked you? And that's 39, and 10, and 20. Did I get everybody?

*Id.* at 45-46.

- 9 -

After several prospective jurors raised their hands indicating they would have difficulty being a fair juror because of their concerns about the Covid-19 pandemic and/or concerns with the trial court's lack of a mask mandate, the trial court held a sidebar discussion. The trial court informed the attorneys "I'll ask if you have strikes for cause, but the Court would…be inclined [for those] people who would have Covid concerns being stricken from the panel with the ones I have and the hearing issues, we have more than enough for the jury panel[.]" ***Id.*** at 48. In response, defense counsel indicated "Your Honor, I'm going to ask that they not be stricken. I think we should *voir dire* a couple of questions and find out if it's the real reason or if they are just trying to get off the jury." ***Id.*** at 49.

The following relevant exchange then occurred during the sidebar discussion:

> THE COURT: Counsel, I am going to ask the panel just so I make sure I have an absolute exact number of which ones have a problem with the Covid policies and serving, and I am going to have them clarified [*sic*] and it is on the record so, the Court's intention is if they answer that they would have a problem serving in anyway regardless of what rules or policies the Court puts in place, they'll be excused from [jury] service and we'll have more than enough jurors for a panel[.]
>
> [DEFENSE COUNSEL]: It just makes me nervous Your Honor because some of them may just not want to serve on a jury which normally we're going to question them to see if they have an actual valid concern, but we seem to be doing it much differently and understanding we're in the middle of a pandemic, so we do things differently than we normally do that may place us at a disadvantage.
>
> THE COURT: I understand. Okay. Thank you.

*Id.* at 49-50.

The sidebar discussion concluded, and the following exchange occurred during the *voir dire*:

> THE COURT: Alright ladies and gentlemen, the attorneys and I discussed some follow-up issues regarding the questioning and the answers that were provided. I just want to make absolutely sure I have the correct juror responses to the questions, several of the questions that were asked. One of them you may recall was asked about concerns if selected as a juror with regard to Covid and the numbers in the Commonwealth right now, etc., maybe there is some concern about the Court's policy or lack of a formal policy if you want to call it, whatever it may be. But of those individuals that who did have a concern serving as a juror during Covid, if you could just to the point that you would not feel comfortable serving regardless, whether selected or not because please remember that there are twelve jurors, two alternate jurors….So, if you could just raise your signs again just so we could make sure we get an accurate count. So, we have juror number 1, 10, 17, and if I call your name, you could put your sign down, 20, 22, 25, 28, 31, 32, 40, 45, and 52. Alright[.]
>
> [DEFENSE COUNSEL]: Your Honor, approach?
>
> THE COURT: In a minute please. The other issue I just want to make sure, I understand juror number 45 you've been having a hard time hearing us if you could hear us at all, but you were one of the individuals who raised your sign for having a hearing issue. Is that correct, sir?
>
> JUROR NO. 45: Yes.
>
> THE COURT: Alright, and I believe juror number 30 did you raise your sign earlier asking about hearing?
>
> JUROR NO. 30: Yes.
>
> THE COURT: Okay. Sir, would that affect your ability to be a fair and impartial juror being a juror in the case if you were to be within the first three, actually I guess it would be the first five rows if selected as a juror?
>
> JUROR NO. 30: If they are talking like you are through the microphone I can hear, but if you were not close to a microphone, I cannot hear you, sir.

*Id.* at 50-52.

The following exchange then occurred during a sidebar discussion:

[DEFENSE COUNSEL]: Well, my problem is Your Honor that we only have two African Americans on our jury and both of them apparently are going to be stricken because of the concerns about Covid. At this point in time, again this jury is not going to represent fairly across that because of the Covid[, which is] something completely outside of our control, neither one of them said they couldn't serve as a juror, what they are saying is that they are concerned about the Covid because these along with a bunch of other people so that it is going to strip my jury of my only two African American jurors which means the twelve jurors will no longer be a jury of my peers. It's not really a *Batson*[3] challenge, Your Honor, because if the Commonwealth hasn't have [*sic*] stricken them then Covid has stricken them, but again that is going to be a no longer fair and impartial jury seeing [*sic*] completely outside of the control of my client being Covid-19.

THE COURT: Well, I don't think it would fit within *Batson* but---

[DEFENSE COUNSEL]: Well, it's not *Batson* Your Honor, it's a different but it's the same result if it's not the Covid-19 concern it's African American. We understand that Covid has been affecting the African American community greater than it has and in different ways than it has in the Caucasian community. If they are being stricken off, I no longer have a fair jury for my client in the overall process of the community and a jury of his peers and because of their fears of Covid and it's disproportionate and I ask for a continuance.

THE COURT: Alright. The objection is noted but overruled.

*Id.* at 52-53 (footnote added).

_____

[3] *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Based on the aforementioned, the trial court removed the prospective jurors who indicated they had hearing difficulties, concerns about serving as a juror because of the Covid pandemic, and/or concerns about the trial court's decision to not require face masks. *Id.* at 53. Jury selection then continued with the attorneys exercising their peremptory challenges until a final jury, plus alternates, were selected.

At the jury trial, the Commonwealth established that, on March 23, 2019, just after midnight, Pennsylvania State Police Troopers Kristopher Ketten and Nathan Conway were on patrol in a marked cruiser. N.T., 11/12/20, trial, at 25. They made a right turn from Route 739 South onto Doolan Road in Pike County when they observed a vehicle approaching in the opposing lane of travel with its high beam lights activated. *Id.* The vehicle traveled partially into the troopers' lane of travel. *Id.*

The troopers turned their vehicle around and ran the vehicle's registration, at which point they discovered there was "no insurance on the vehicle." *Id.* at 26. The troopers activated their cruiser's emergency lights and sirens; however, the vehicle failed to yield, resulting in a chase reaching "speeds of eighty miles an hour[.]" *Id.* at 25. After "one point five miles[,]" the vehicle stopped, and the troopers approached the vehicle. *Id.* at 26.

Appellant was seated in the driver's seat, and the troopers smelled a strong odor of alcohol as they approached the vehicle. *Id.* at 27. Appellant was unable to provide the troopers with his driver's license. *Id.* at 28.

Appellant refused to perform field sobriety tests and asked, "[C]an't we just do a breathalyzer?" *Id.* at 32. Accordingly, the troopers transported Appellant to the Blooming Grove barracks where they administered a breathalyzer, which revealed a BAC of 0.134%.

The jury convicted Appellant of DUI-high rate of alcohol-4th offense or subsequent, and the trial court convicted Appellant of numerous offenses indicated *supra*. On April 29, 2021, Appellant proceeded to a sentencing hearing at the conclusion of which the trial court imposed an aggregate of eighteen months and ninety days to sixty months in prison with credit for time served. This timely appeal followed. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement,[4] Appellant timely complied, and the trial court filed a Pa.R.A.P. 1925(a) opinion.

In his first issue, Appellant challenges the manner in which the trial court conducted *voir dire* as it relates to the use of Covid-19 protocols. Specifically, he contends the trial court improperly modified the *voir dire* process by permitting prospective jurors to wear face masks during *voir dire*.[5] Appellant argues he was "stripped" of his right to choose a "fair,

_____

[4] We note that, pertaining to the contents of the trial court's order, the order complies with Pa.R.A.P. 1925(b)(3). Moreover, the certified docket entries contain a notation indicating the order was served on Appellant's counsel on May 28, 2021, in compliance with Pa.R.Crim.P. 114.

[5] In his appellate brief, Appellant also avers the trial court abused its discretion in permitting the prospective jurors to sit in the Courtroom
*(Footnote Continued Next Page)*

- 14 -

competent, and impartial" jury since he was unable to gauge the prospective jurors' facial expressions and credibility while they were wearing face masks. Appellant's Brief at 12.

"The Sixth and Fourteenth Amendments guarantee a defendant the right to, *inter alia*, an impartial jury, and this right extends to both the guilt and sentencing phases of trial." *Commonwealth v. Le*, 652 Pa. 425, 208 A.3d 960, 972 (2019) (citation omitted). Thus, the jury selection process is crucial to the preservation of a criminal defendant's constitutional right to an impartial jury. *See Commonwealth v. Hunsberger*, 619 Pa. 53, 58 A.3d 32 (2012).

> *Voir dire* plays a critical function in assuring the criminal defendant that his right to an impartial jury will be honored. Without an adequate *voir dire*, the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled.
>
> While this Court has explained that the scope of *voir dire* is within the sound discretion of the trial court, the United States Supreme Court has stated that the exercise of the trial court's discretion,...[is] subject to the essential demands of fairness.

---
*(Footnote Continued)* ────────────

gallery, which was approximately one hundred feet from counsel, during *voir dire*. However, Appellant failed to raise this specific issue in his court-ordered Pa.R.A.P. 1925(b) statement. Accordingly, this issue has been waived. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); **Commonwealth v. Scott**, 952 A.2d 1190, 1191 (Pa.Super. 2008) (holding issues not raised in a Rule 1925(b) concise statement are waived).

*Le*, *supra*, 208 A.3d at 972-73 (quotation marks, quotations, and citation omitted). *See Commonwealth v. Impellizzeri*, 661 A.2d 422, 427 (Pa.Super. 1995) (holding that, in reviewing a trial court's ruling on a challenge to the empaneling of a jury, "we employ a standard of review which affords great deference to the trial judge") (citation omitted)).

> [Moreover,] [t]he purpose of *voir dire* is solely to ensure the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court....*Voir dire* is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies.

*Commonwealth v. Knight*, ____ Pa. ____, 241 A.3d 620, 640 (2020) (quotation marks and quotation omitted).

In the case *sub judice*, the trial court set forth the following reasons for denying Appellant's objection and permitting prospective jurors to wear face masks during *voir dire*:

> The first question presented is whether the trial court erred or abused its discretion by permitting jurors to wear masks which obscured their faces during jury selection as opposed to clear face shields, when both Appellant and his counsel were unable to see the facial expressions of the potential jurors[.] [A]ll masking protocols implemented by the trial court was conducted in accord[ance] with AOPC[6] Recommendations….[T]he trial court adhering to the AOPC Recommendations and…allowing potential jurors to wear opaque masks during jury selection was neither error nor an abuse of discretion.
>
> On March 16, 2020, the Supreme Court of Pennsylvania declared a state-wide judicial emergency due to the public health

---

6 "AOPC" refers to the Administrative Office of Pennsylvania Courts.

crisis caused by the Covid-19 [p]andemic. Pursuant to that emergency declaration, all jury trials in the Commonwealth were suspended through June 1, 2020. On May 11, 2020, [AOPC] created the Jury Trial Working Group ("JTWG") to identify issues and provide recommendations in anticipation of [resuming]…jury trial[s] in the Commonwealth. By June 25, 2020, the JTWG issued a series of recommendations for those judicial districts where jury trials would resume ("AOPC Recommendations").

The AOPC Recommendations state in relevant part:

Face coverings or masks that cover the nose and mouth should be required for all the personnel and the public. The court should consult with counsel for the parties about how to handle the wearing of masks by witnesses while testifying and the jurors during *voir dire*. The court may want to consider the use of clear protective masks, so facial expressions and demeanor may be evaluated.

AOPC Recommendations, p. 8….[The trial court notes that] [m]asking and social distancing of prospective jurors does not interfere with the purpose of *voir dire*: the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court.

Trial Court Opinion, filed 8/3/21, at 4-5 (citations omitted) (footnote added).

We agree with the trial court's sound reasoning. We conclude the trial court did not abuse its discretion as to the scope or form of the *voir dire* examination and abided by the "essential demands of fairness." **Le**, ***supra***, 208 A.3d at 973. **See Commonwealth v. Delmonico**, 251 A.3d 829 (Pa.Super. 2021) (holding the trial court's masking and social distancing requirements during *voir dire* did not violate the appellant's right to an impartial jury or notions of due process).

The record in the instant case reflects that, in response to the emergency circumstances related to the Covid-19 pandemic, the trial court

reasonably examined the recommendations provided by AOPC regarding *voir dire* and, based thereon, reasonably concluded that potential jurors were permitted to wear face masks.[7] The trial court's protocols were not arbitrary; but rather, reflected careful consideration of governing safety and health measures.

Moreover, there is no evidence the trial court's discretion in permitting the prospective jurors to wear masks interfered with the sole purpose of *voir dire*: "the 'empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court.'" ***Delmonico***, 251 A.3d at 832 (quotation marks and quotation omitted). Thus, Appellant is not entitled to relief on this claim.

Appellant additionally contends the trial court abused its discretion in permitting the jurors, who were selected for trial, to sit in the gallery of the Courtroom, which was approximately thirty feet from the witness stand, for the duration of the trial.[8] He suggests he did not have the benefit of a "fair,

_____

[7] To the extent Appellant suggests the trial court required the prospective jurors to wear face masks, we find no merit. The record reflects the trial court specifically indicated it had "not imposed a mask mandate." N.T., 11/12/20, jury selection, at 44. Rather, the trial court permitted the prospective jurors to wear face masks and directed everyone to be "courteous and respectful" of each person's decision about wearing a mask. ***Id.***

[8] In his appellate brief, Appellant also contends the trial court abused its discretion in permitting jurors to wear face masks for the duration of the trial. However, Appellant failed to raise this specific issue in his court-
*(Footnote Continued Next Page)*

competent, and impartial" jury since the jury was forced to observe witnesses from an excessive distance. Appellant's Brief at 12.

As indicated *supra*, Appellant had the right to a fair and impartial jury. *See Le*, *supra*. In addressing Appellant's issue and explaining the reasons it required the jury to sit in the gallery, as opposed to the jury box, during trial, the trial court indicated the following:

> The question presented is whether the trial court erred or abused its discretion by having the jury sit in the gallery of the Courtroom when the jury was approximately thirty (30) feet from the witness stand[.] [T]he AOPC Recommendations suggest that the jury be seated in the Courtroom gallery to accommodate social distancing requirements….[T]he trial court adhered to the AOPC Recommendations and…seating jurors in the gallery of the Courtroom was neither error nor an abuse of discretion.
>
> As stated *supra*, the AOPC Recommendations also indicate that courts should consider seating jurors in a cordoned-off section of the Courtroom gallery instead of the jury box…[and] maintain social distance between jurors[.] AOPC Recommendation, p. 16, 20, 22.
>
> [T]he layout [for Appellant's trial] was planned and [done] in accord[ance] with AOPC Recommendations. Here, the witness stand was relocated to the jury box[,] and the jurors were seated at least six (6) feet from any other juror in the rows of the Courtroom gallery closest to the witness stand. Both the Commonwealth and Defense tables were rotated ninety (90) degrees to face the witness stand, and the presiding Judge remained on the bench to the left of [the] counsels' tables. This layout, while admittedly not ideal, presented the most practical

*(Footnote Continued)* ────────────

ordered Pa.R.A.P. 1925(b) statement. Accordingly, this issue has been waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Scott*, *supra* (holding issues not raised in a Rule 1925(b) concise statement are waived).

and effective accommodations for the jury and witnesses in a spacious Courtroom constructed in 1874. Appellant was still seated at counsel table in a position furthest from the jury with the jury seated to his right and with no more [of] an obstructed view as would be present without the modified layout. Although constructed in 1874, [the] Courtroom is retrofitted with large LED screens[,] which allow proffered evidence to be viewed in the gallery and a sound system which projects the voices of the presiding Judge, litigants, attorneys, and witnesses. Additionally, neither the court nor the tipstaff were informed of any issues regarding the jury's ability to view the witnesses, hear their testimony or observe any evidence presented.

Since the trial court adhered to the AOPC Recommendations on social distancing and seating a jury in the gallery,…the judgment exercised was neither manifestly unreasonable, nor the result of partiality, prejudice, bias or ill will[.]

Trial Court Opinion, filed 8/3/21, at 7-8.

We agree with the trial court's sound reasoning and find no abuse of discretion. The record reveals the trial court reasonably considered the recommendations provided by AOPC regarding safety measures for jurors to be seated during the Covid-19 pandemic. The trial court's social distancing protocols were not arbitrary; but rather, reflected careful consideration of governing safety and health measures. *See Delmonico*, *supra*. Furthermore, Appellant has failed to demonstrate any prejudice, including that the jury was not fair and impartial as a result of the social distancing protocols. *See Le*, *supra*. Thus, we find he is not entitled to relief on this claim.

In his next issue, Appellant contends the trial court erred in dismissing all prospective jurors who indicated during *voir dire* that their concerns

about the Covid-19 virus would impact their ability to be fair and impartial jurors. Appellant contends the trial court should have inquired further to determine whether each prospective juror's concern was legitimate and, if so, whether the trial court could provide an appropriate accommodation before disqualifying the jurors.

It is well established that:

> The test for determining whether a prospective juror should be disqualified is whether he [or she] is willing and able to eliminate the influence of any scruples and render a verdict according to the evidence, and this is to be determined on the basis of answers to questions and demeanor....It must be determined whether any biases or prejudices can be put aside on proper instruction of the court....The decision on whether to disqualify is within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of discretion....

*Commonwealth v. Wilson*, 543 Pa. 429, 672 A.2d 293, 299 (1996) (quotation omitted).

Here, in explaining the reasons it disqualified several prospective jurors, who, in response to defense counsel's questions, expressed concern about their abilities to be fair jurors because of their worries about the Covid-19 pandemic and/or the trial court's policies in response thereto,[9] the trial court indicated the following:

> The question presented is whether the trial court committed palpable error by dismissing potential jurors

_____

[9] We note the trial court also disqualified the prospective jurors who expressed having difficulty hearing the proceedings. Appellant has not challenged this portion of the trial court's ruling.

- 21 -

experiencing anxiety or uneasiness about sitting for jury duty because of Covid-19 when Appellant's counsel was not permitted to ask follow-up questions….[T]he trial court's [disqualification] of anxious potential jurors without allowing follow-up [questions] did not interfere with the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the court's instructions, and, therefore,…the trial court neither erred nor abused its discretion.

As stated *supra*, the purpose of *voir dire* is the empaneling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court. ***See generally Delmonico***[, ***supra***].

Here, Appellant appears to allege that he was somehow prejudiced by his counsel being precluded from asking follow-up questions regarding Covid-19 during *voir dire*. We disagree because dismissing those jurors with Covid-19 induced anxiety and not forcing them to sit on a jury did not interfere with the purpose of *voir dire*, *to wit*, empaneling a jury that is competent, fair, impartial, unprejudiced, and able to follow the trial court's instruction.

[T]he actions of the trial court [are] in accord[ance] with AOPC Recommendations, and, therefore,…the trial court did not commit a palpable error by dismissing every potential juror who indicated he or she had Covid-19 concerns about sitting for jury duty[.]

Trial Court Opinion, filed 8/3/21, at 6-7.

We conclude the trial court did not abuse its discretion in disqualifying the prospective jurors who indicated they would have difficulty being fair jurors in light of their fears about sitting in the Courtroom and/or the trial court's lack of a mask mandate during the Covid-19 pandemic. The trial court, which observed the prospective jurors' demeanor and heard their responses to defense counsel's questions, was in the best position to assess whether the prospective jurors would be fair. ***See Wilson***, ***supra***. Further,

we note the trial court did not act arbitrarily but did so in accordance with guidance from AOPC regarding Covid-19 protocols.

Moreover, to the extent Appellant contends the trial court erred in disqualifying the prospective jurors without giving defense counsel the option to ask follow-up questions, Appellant is not entitled to relief. Simply put, Appellant has not explained what additional questions defense counsel would have asked or how further questioning would have shed light on the "validity" of the prospective jurors' concerns. Thus, we find no abuse of discretion.[10] *See Wilson*, *supra*.

In his final claim, Appellant argues the trial court erred in failing to provide the jury with an instruction regarding the twenty-minute observation

_____

[10] In his brief, Appellant additionally suggests the trial court's disqualification of the prospective jurors, who expressed concern about serving during the Covid-19 pandemic, resulted in a deprivation of his Sixth Amendment right to a trial by a jury of his peers drawn from a source fairly representative of the community. Appellant's Brief at 13-14. However, Appellant did not raise this specific issue in his court-ordered Pa.R.A.P. 1925(b) statement. Accordingly, this issue has been waived. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this accordance with the provisions of this paragraph (b)(4) are waived."); *Scott*, *supra* (holding issues not raised in a Rule 1925(b) concise statement are waived).
  Moreover, aside from citing to a non-precedential decision, ***Commonwealth v. Bey***, No. 1693 WDA 2010 (Pa.Super. filed July 12, 2013) (unpublished memorandum), Appellant has set forth no authority for his position. Thus, his issue is also waived on this basis. *See* Pa.R.A.P. 2119(a) (indicating the argument shall include discussion and citation of pertinent authorities).

period required prior to chemical breath testing. Specifically, Appellant contends the following:

> [There were] discrepancies regarding the performance of the twenty-minute observation period, [and, thus,] the trial court failed to provide a jury instruction regarding the chemical breath test. Failure to do so was an abuse of discretion by the trial court that controlled the outcome of this case.
>
> Said impact is evidenced by the jury returning a question for the court concerning the Breathalyzer test. The jury returned the following question for the trial court: "Can the Breathlyzer [*sic*] be used right away after two unsuccessful attempts?"
>
> Had the trial court provided the jury instruction regarding the twenty-minute observation period, the jury would have been substantially better versed in the law concerning the test, and thus more capable in evaluating the test for its validity.

Appellant's Brief at 17-18.

Preliminarily, we note that, after the parties rested, they submitted their points for charge. Defense counsel submitted two points for charge, one of which related to Subsection 77.24(a) of Title 67 of the Pennsylvania Code.[11] N.T., 11/13/20, trial, at 70. The following relevant exchange occurred during the charging conference:

---

[11] This Subsection provides the following:
**§ 77.24. Breath test procedures.**
(a) *Observation.* The person to be tested with breath test equipment shall be kept under observation by a police officer or certified breath test operator for at least 20 consecutive minutes immediately prior to administration of the first alcohol breath test given to the person, during which time the person may not have ingested alcoholic beverages or other fluids, regurgitated, vomited, eaten or smoked. Custody of the person may be
*(Footnote Continued Next Page)*

THE COURT: [T]he defense has requested a charge for Pennsylvania Code Regulation 77.24(a) of Title 67. [Defense counsel,] if you want to address the basis for that request?

[DEFENSE COUNSEL]: [T]here is a finding of fact for the jury on whether or not the twenty-minute test period was done correctly, timely, or at all. So, the breath test procedures, which have been testified to by the Commonwealth's witness, I think need to be explained to the jury what the actual Code Section is. It just simply talks about observation, and how it has to be done, and why it has to be done, which goes right to the test. The test is the only evidence of my client's guilt quite frankly in this. And so, they need to know those test procedures, which have been testified [to] quite a bit[,] and this reference has been, we referenced it in…Trooper [Conway's testimony,] who…agreed that there had to be this twenty-minute observation period, and why there had to be[,] so I'm just simply asking the Court to give that Section to the jurors.

THE COURT: Alright. Thank you. Commonwealth?

[DEFENSE COUNSEL]: Again, they are the finders of the fact in all of this, very specifically they are the finders of fact.

THE COURT: Okay. Thank you. [ADA].

[ADA]: Your Honor, again I think this goes to the gatekeeping function of the Court who may determine whether the case goes to the jury but it's not a jury issue. The standard instructions involving a DUI. I know DUI is a very common offense in the Court system and apparently a determination has been made that this information should not be in there as part of the standard instruction and I believe appropriately so given that it is more of a suppression issue, and also an issue of whether it just goes to the jury as opposed to a jury issue itself.

THE COURT: Alright. Thank you. The request for charge under Regulation 77.24(a) will be denied.

_(Footnote Continued)_ ────────────────

transferred to another officer or certified breath test operator during the 20 consecutive minutes or longer period as long as the person to be tested is under observation for at least 20 consecutive minutes prior to initial administration of the alcohol breath test.

67 Pa. Code § 77.24(a) (emphasis in original).

*Id.* at 70-71.

Defense counsel took no exception or made any further argument regarding the proposed point for charge.

The trial court then gave its jury instruction, which did not include any reference to defense counsel's proposed point for charge relating to Subsection 77.24(a). *Id.* at 101-12. However, despite being given the opportunity to do so, defense counsel did not object to the jury instruction on the basis it omitted reference to the law as set forth in Subsection 77.24(a).

Thereafter, during deliberations, the jury asked the following question (verbatim): "Can the analyzer be used right away after two unsuccessful attempts legally?" *Id.* at 118. The trial court responded:

> Ladies and gentlemen, the question that you've presented which is I will refer to it as a breathalyzer, whether the breathalyzer can be used right away after two unsuccessful attempts legally or not is not a consideration for the jury in this case to make. Your determination needs to be what are the facts of the case, apply those facts to the law that the Court has given you which are the elements of the offense for the charged offense of Driving Under the Influence and…find whether the Commonwealth has proven the elements of that offense beyond a reasonable doubt. So, I'll just reiterate the question that you've asked, there may have been testimony regarding the machine, etc., but that is not a consideration for the jury in this case. So, I will leave my answer at that. I'll make the note available for the record as required, and then I'll just ask that you continue your deliberations and if you have any further questions, you may present those as you did with this one.

*Id.* at 118-19.

Defense counsel lodged no objection to the trial court's supplemental instruction in response to the jury's question.

Initially, we must determine whether Appellant has preserved his challenge to the trial court's jury instruction. Our Supreme Court has stated:

> A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of. Pa.R.A.P. 302(b). Additionally, [our Supreme] Court has held that, in the criminal trial context, the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

*Commonwealth v. Sanchez*, 623 Pa. 253, 82 A.3d 943, 978 (2013) (citations omitted). *See Commonwealth v. Pressley*, 584 Pa. 624, 887 A.2d 220, 224 (2005) (holding that "[t]he pertinent rules [of Criminal Procedure]…require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction"); Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").

In the case *sub judice*, although Appellant included an instruction pertaining to Subsection 77.24(a) of Title 67 of the Pennsylvania Code in his proposed points for charge, defense counsel did not object or take exception when the trial court indicated it would not give the instruction.

Further, after the trial court gave its jury instruction, which did not include Appellant's proposed instruction regarding Subsection 77.24(a), defense counsel did not object to the instruction on this basis. Thus, in light of ample precedent, we conclude Appellant has waived his instant challenge to the jury instruction. *See Commonwealth v. Hitcho*, 633 Pa. 51, 123 A.3d 731, 756 (2015) (holding the appellant waived his challenge to jury instruction where the appellant made no specific objection or exception to the charge or the trial court's rulings respecting the points); *Pressley*, *supra*; *Commonwealth v. Parker*, 104 A.3d 17 (Pa.Super. 2014) (holding submission and subsequent denial of proposed points inconsistent with given jury instructions will not preserve issue even where counsel objected to charge at charging conference where no objection lodged to actual instruction given); *Commonwealth v. Baker*, 963 A.2d 495 (Pa.Super. 2008) (holding the appellant failed to preserve challenge to jury instruction where she did not assert that she lodged specific objection or exception to instruction that was given).

Moreover, to the extent Appellant challenges the trial court's supplemental instruction in response to the jury's question regarding the breathalyzer, we note Appellant lodged no objection to the trial court's

supplemental instruction. Thus, he has waived any issue with regard thereto.[12] **See Sanchez**, **supra**.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2022

---

[12] We note that, aside from citing to **Commonwealth v. Sasse**, 921 A.2d 1229 (Pa.Super. 2007), for the general proposition that a trial court must instruct a jury on a defense if the defense was raised properly and supported by the record, Appellant has failed to develop his appellate argument with citation to appropriate authority. Pennsylvania Rule of Appellate Procedure 2119(a) indicates that an appellant shall provide discussion and citation to authorities deemed pertinent.

In the case *sub judice*, Appellant has provided scant discussion of or citation to pertinent authorities regarding his claim that the trial court erred in refusing to give his proposed jury instruction under 67 Pa. Code § 77.24(a). **See** Appellant's Brief at 15-17. Thus, Appellant's issue may be deemed waived on this basis, as well. **See Commonwealth v. Martz**, 232 A.3d 801 (Pa.Super. 2020) (holding issue waived where the appellant failed to develop appellate argument with citation to pertinent authority).