J-S36009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GERALD JAMES BOYLE | : | |
| | : | |
| Appellant | : | No. 581 MDA 2024 |

Appeal from the Judgment of Sentence Entered September 21, 2022
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0000788-2021

BEFORE: LAZARUS, P.J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: MARCH 21, 2025**

Gerald James Boyle appeals from the judgment of sentence, entered in the Court of Common Pleas of Lackawanna County, following his convictions for delivery of a controlled substance,[1] criminal use of a communication facility,[2] and possession of a controlled substance—methamphetamine.[3] After review, we affirm.

The trial court provided the following factual summary:

> [Boyle] was taken into custody by detectives Harold Zech and John Munley, of the Lackawanna Drug Task Force of the District Attorney['']s Office, on or about March 25, 2021.  Charges included one count each of delivery of a controlled substance [], criminal use of a communication facility [], and possession of a controlled substance [].  Detectives used the assistance of a paid confidential informant (["]CI["])[,] who has participated in work with

---

[1] 35 P.S. § 780-113(a)(30).
[2] 18 Pa.C.S.A. § 7512.
[3] 35 P.S. § 780-113(a)(16).

Detective Zech about twenty-two times prior to her cooperation in [Boyle]'s case.

[The CI] started working with [Detective] Zech as a CI in 2019. [Detective] Zech would pay her in cash for the information she provided that led to arrests. [The CI] previously was a drug user and has a prior record, which includes convictions for receiving stolen property and making false reports to law enforcement. At the time when she testified in [Boyle]'s trial, [the CI] had pending theft charges.

[The CI] met [Boyle] at the New Penny Bar on Main Avenue in Scranton and stayed connected with him through Facebook Messenger. On or about March 21, 12:01 am, [Boyle] reached out to [the CI] to attempt to get her to buy drugs from him with repeated calls and messages, continuing until March 24, 2021. On March 25, 2021, [the CI] met [Detective] Zech at the District Attorney's office to show him the correspondence with [Boyle] and was attempting to "buy time" for the detectives to set up a controlled buy.

Prior to conducting the controlled buy in this case, [Detective] Zech conducted a search of the CI's person. Searches of female CIs are typically done by a female detective, but there were none available at this time. During the search, [Detective] Zech instructed [the CI] to open her bra and shake it out along with her hair, then he ran the back of his hand down her legs, and then he had [the CI] take off her socks and shoes so he could search them too. He did not find any contraband.

After showing [Detective] Zech the messages that [Boyle] was sending to [the CI], [Detective] Zech set up a body wire on [the CI] and gave [] $100[.00] of "buy money" to her so that she could purchase a quantity of methamphetamine from [Boyle]. Detectives Zech and Munley coordinated regarding location and surveillance as they planned to take the CI to the agreed meeting spot to buy from [Boyle]. [Detective] Zech dropped the CI off at the corner near Madzin's Market in South Scranton and parked across the street to watch over her as she waited ten minutes for [Boyle] to arrive. [Boyle] pulled up in a vehicle, the CI entered it, and they had a conversation[,] after which [Boyle] drove about two-to-two-and-[a-]half blocks down the road where the exchange [] occurred. [The CI] said the agreed upon phrase "I'll

call you tomorrow[,]" which signaled to detectives that the exchange was completed.

At this time, the detectives pulled over [Boyle]'s car and then boxed him in, which led to him being placed in custody. [The CI] was taken to [Detective] Zech's vehicle and was searched again by [Detective] Zech the same way she was searched at the office. During this search, [the CI] gave the small plastic bag of methamphetamine to [Detective] Zech, and she went home.

Detective Munley, on the arrest team for [Boyle], was in his undercover vehicle when he made the arrest on [Boyle] after the traffic stop. On [Boyle]'s person, [Detective Munley found] the $100[.00] that the detectives gave to [the CI], a separate $58[.00], and the phone [Boyle] used to message and contact [the CI]; [Boyle] had no drug paraphernalia.

Afterwards, evidence was submitted to the Pennsylvania State Police drug identification unit and toxicology unit. The evidence submitted included a Ziploc sealed bag labeled as a Happy Bird, which was determined to contain a crystalline substance-Methamphetamine.

Trial Court Opinion, 6/17/24, at 2-4 (citations omitted).

Based upon the above, the Commonwealth arrested Boyle and charged him with the aforementioned offenses. On May 18, 2022, a jury found Boyle guilty on all charges. On August 19, 2022, the court sentenced Boyle to an aggregate term of three to six years' incarceration. Boyle initially filed a timely notice of appeal, which was quashed on December 5, 2022 due to Boyle's failure to file a docketing statement. Boyle filed a *pro se* PCRA motion to reinstate his direct appellate rights on November 20, 2023, which the PCRA court granted on February 27, 2024. Boyle then filed a *nunc pro tunc* notice of appeal on March 21, 2024.

Boyle raises two issues on appeal:

> (1) Where the Commonwealth utilized a paid [CI] who had not been adequately and completely searched, prior to initiation and completion of the controlled buy, did the Commonwealth fail to prove, beyond a reasonable doubt, that [Boyle] committed the offense of delivery of a controlled substance [], criminal use of a communication facility [] and possession of a controlled substance []?
>
> (2) Where the [CI] testified that she not only had been convicted of a crime that constituted *crimen falsi* but, also, had pending charges, did the trial court err in failing to provide a corrupt and polluted source jury instruction?

Appellant's Brief, at 3 (italics ours).

In his first claim, Boyle alleges that the Commonwealth did not prove its case beyond a reasonable doubt because the CI was not adequately searched prior to the controlled buy and, thus, her credibility was questionable.[4] *See id.* at 27. Boyle contends that [the CI] was subject to a less thorough search prior to the controlled buy because a female officer was not present. That "oversight," he claims, "raises the possibility that [the CI] could have concealed the methamphetamine on her person before the transaction[.]" *Id.* at 26. In calling the CI's credibility into question, Boyle points to the $100.00 she received for assisting as a CI, "combined with her pending charges and her admission of being convicted for making false statements." *Id.* at 27.

---

[4] Although Boyle's argument could have been more appropriately framed as a challenge to the weight of the evidence, we will assess it as he has presented it. Were Boyle to have raised a weight of the evidence claim in his brief, that claim would have been waived due to his failure to raise the claim either at trial, in a written motion before sentencing, or in a post-sentence motion. *See Commonwealth v. Delamarter*, 302 A.3d 1195, 1200 (Pa. Super. 2023), citing Pa.R.Crim.P. 607(A)(1)-(3).

When assessing a challenge to the sufficiency of evidence, we adhere to the following standard of review:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the [factfinder] to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the [factfinder].

**Commonwealth v. Scott**, 325 A.3d 844, 849 (Pa. Super. 2024), citing **Commonwealth v. Rosario**, 307 A.3d 759, 764-65 (Pa. Super. 2023).

The Controlled Substance, Drug, Device and Cosmetic Act delineates the following prohibited acts:

> Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. § 780-113(a)(16).

> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

*Id.* § 780-113(a)(30).

For a defendant to be liable for delivering a controlled substance under subsection 780-113(a)(30), "there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." *Commonwealth v. Ellison*, 213 A.3d 312, 319 (Pa. Super. 2019), citing *Commonwealth v. Murphy*, 844 A.2d 1228, 1234 (Pa. 2004). A defendant transfers drugs "whenever he physically conveys drugs to another person." *Id.*, citing *Murphy*, 844 A.2d at 1234.

Last, a person commits the offense of criminal use of a communication facility when he "uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under . . . The Controlled Substance, Drug, Device and Cosmetic Act." 18 Pa.C.S.A. § 7512(a). A "communication facility" is defined as "a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data[,] or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic[,] or photo-optical systems or the mail." *Id.* § 7512(c).

The trial court submits the Commonwealth met its burden notwithstanding the fact that a more thorough search of the CI's person

could have been conducted prior to the controlled buy because "the CI and [Detectives Zech and Munley] testified extensively on direct and cross examination regarding the manner in which the CI was searched." Trial Court Opinion, 6/17/24, at 5-6, citing N.T. Jury Trial, 5/18/22, at 18, 31, 37, 41-42; 50, 52, 72-74; 90-91, 106-08. Further, the trial court notes how "counsel for [Boyle] thoroughly explored the point that no female law enforcement agent was available to search the CI here, as would have been the investigators' preference, which resulted in the omission of a strip search of her person prior to the controlled purchase." *Id.* at 6 (citation omitted). As for Boyle's assertion that the CI's credibility was dubious because of her role as a paid informant, the trial court found this unpersuasive because "the CI and [Detectives Zech and Munley] testified as to this reality, [] and the court instructed the jury that it could consider the same in evaluating [the CI]'s credibility[.]" *Id.* at 5, citing N.T. Jury Trial, 5/18/22, at 28, 74, 103, 154. The trial court concluded that "[t]he matter was within the jury's exclusive purview . . . and upon review, nothing in the record belies their conclusion or warrants relief." *Id.* at 6. We agree.

In addition to the testimony relied upon by the trial court, further review of the testimony and exhibits introduced at trial likewise supports that the Commonwealth met its burden. The CI testified that she was unaware of who would be searching her and that she had only ever been strip searched by female officers before prior controlled buys. *See* N.T.

Jury Trial, 5/18/22, at 31 ("[N]ormally a lady goes in the bathroom with me and I strip down. This is the first time that didn't happen."). The jury could have inferred from the CI's testimony that she would have anticipated being strip searched by a female officer yet again, thus directly contradicting Boyle's contention that the CI may have concealed the methamphetamine on her person prior to the controlled buy.

Additionally, the Commonwealth introduced exhibits displaying Boyle's efforts to contact the CI via telephone to sell her methamphetamine, *see id.* at 14-21 (Commonwealth introducing text messages and recording of phone call between CI and Boyle from day of controlled buy), as well as a recording of the conversation between the CI and Boyle in his car during the controlled buy. *See id.* at 22-25 (Commonwealth playing recording from body wire CI wore throughout controlled buy). Therefore, based on our review of the record, and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find there was sufficient evidence – both direct and circumstantial – for the jury to conclude that Boyle was guilty of the charged offenses. *See Ellison*, 213 A.3d at 319-20 (upholding sufficiency of evidence for convictions for criminal use of communication facility and delivery of controlled substance where text messages, CI testimony, and recording of controlled buy presented at trial).

Boyle's second claim is that the trial court erred in not providing a "corrupt and polluted source"[5] jury instruction. *See* Appellant's Brief, at 3. However, we conclude that Boyle has waived this claim.

Boyle's argument regarding a corrupt and polluted source jury instruction is waived because he did not properly preserve it at trial or fully develop an argument on the issue in his brief. *See* Pa.R.A.P. 302(b) ("A general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); *see* Pa.R.A.P. 2119(a) ("The argument shall . . . [include] such discussion and citation of authorities as are deemed pertinent."). At trial, while Boyle's counsel requested the corrupt and polluted jury instruction, *see* N.T. Jury Trial, 5/18/22, at 75-77, he did not object—let alone make argument—but instead remained silent when the court told him it would not provide the requested charge and when it concluded its jury instructions without providing the requested charge. *See id.* at 113, 163.

In his brief, Boyle does not make argument or even mention the corrupt and polluted source jury instruction beyond his statement of questions involved and section headings. *See id.*, at 3, 21-28. Boyle's argument on this point, therefore, is waived. ***See Commonwealth v.***

_____

[5] "Corrupt and polluted source" is the common phrase used to refer to the standard jury instruction for accomplice testimony. ***See Commonwealth v. Johnson***, 192 A.3d 1149, 1152 n.5 (Pa. Super. 2018) (citation omitted).

*Davis*, 273 A.3d 1228, 1245-46 (Pa. Super. 2022) (finding appellant waived claim regarding failure to instruct jury under Rule 302(b) where appellant requested instruction but did not object or take exception to trial court omitting requested instruction); *see Commonwealth v. Holmes*, 327 A.3d 307, 312 (Pa. Super. 2024) (finding waiver under Rule 2119(a) where appellant did not develop claim in meaningful way).

Boyle instead avers in his brief that the court should have given the jury the "Certain Testimony Subject to Special Scrutiny" instruction. *See* Appellant's Brief, at 21-28. That contention is similarly waived under Pa.R.A.P. 302(b) and 2116(a). *See* Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."). At trial, Boyle's counsel did not request this instruction, instead only citing it by mistake when referring to the accomplice instruction by the wrong numeric title before correcting himself. *See* N.T. Jury Trial, 5/18/22, at 76-77 ("Atty. Parkins: And then I'm going to ask for the corrupt and polluted source 4.06. . . . I'm sorry, 4.01."); *see also* Pa. SSJI (Crim) 4.01, 4.06. Any claim based upon this instruction is also, therefore, waived. *See Davis*, *supra*; *see also Commonwealth v. Reid*, 259 A.3d 395, 407 (finding

waiver under Rule 2116(a) where appellant did not include issue in statement of questions involved).[6]

Based on the foregoing, it is clear the Commonwealth met its burden at trial and that Boyle waived his claim regarding jury instructions.[7] Accordingly, we affirm.

Judgment of Sentence affirmed.

_____

[6] While Boyle requested a "false in one, false in all" jury instruction at trial and mentioned the court's refusal to provide it in his brief, any claim of error related to this request would also be waived under Pa.R.A.P. 302(b), 2116(a), and 2119(a) for failure to preserve, failure to include in his statement of questions involved, and failure to develop argument in relation thereto. **See Davis, supra.**; **see also Reid**, **supra**; **Ciuro**, **supra**.

[7] Assuming *arguendo* that Boyle had properly preserved his claims regarding accomplice testimony or "false in one, false in all" jury instructions, he would not be entitled to relief. The CI was not an "accomplice" to Boyle's drug-dealing; she was a CI working on behalf of the Commonwealth. **See Commonwealth v. Rizzi**, 586 A.2d 1380, 1383 (Pa. Super. 1991) ("corrupt source" instruction not required as witness was "agent of law enforcement authorities" with "no criminal intent" and therefore not accomplice). The "false in one, false in all" instruction is relevant when a discrepancy in a witness' testimony would allow the jury to "believe[] that a witness deliberately, or willfully and corruptly, testified falsely about a material issue." **See Commonwealth v. Wright**, 324 A.3d 1216 at *5 (Pa. Super. 2024), citing **Commonwealth v. Vicens-Rodriguez**, 911 A.2d 116, 117 (Pa. Super. 2006). Boyle has pointed to no such discrepancy and only ever provided support for this request in his Pa.R.A.P. 1925(b) concise statement. There, he pointed to the CI's prior conviction and her pending charges in support of this request. **See** Appellant's Rule 1925(b) Statement, 5/16/24, at 2 (referencing CI's prior conviction for making false reports to law enforcement and her pending charges). This Court is, however, aware of no case in support of providing such an instruction based upon a prior *crimen falsi* conviction, and thus his claims would fail even if properly preserved.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/21/2025