366 A.2d 246
**COMMONWEALTH of Pennsylvania,**
**Appellee,**
**v.**
**Clifford FUTCH, Appellant.**

Supreme Court of Pennsylvania.
Argued Sept. 20, 1976.
Decided Nov. 24, 1976.

Paul R. Gettleman, Welsh S. White, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Robert L. Campbell, Asst. Dist. Attys., Pittsburgh, for appellee.

Vincent X. Yakowicz, Sol. Gen., Peter B. Foster, Deputy Atty. Gen., Harrisburg, for intervenor.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

Appellant, Clifford Futch, was convicted by a jury of murder of the first degree for the killing of Charles Ganss and the punishment was fixed at death. Following the denial of post-verdict motions the sentence was imposed as the jury had directed. This direct appeal from the judgment of sentence followed. A new trial is required because the trial court erred in refusing to allow a question requested by the defense for the voir dire examination of prospective jurors.[1]

On February 26, 1975, at approximately 7:20 a. m., Charles Ganss, an inmate at the State Correctional Insti-

---

1. Futch also challenges: (1) the denial of a motion to quash the jury panel after the prosecutor exercised his peremptory challenges to strike all black prospective jurors; (2) the denial of a motion to compel eye examinations of the two eyewitnesses at county expense; (3) the trial judge's refusal to recuse himself; (4) the trial judge's ruling sustaining an objection to a certain line of inquiry of a defense witness; (5) the propriety of certain remarks by the prosecutor; and (6) the constitutionality of Pennsylvania's capital sentencing scheme. We need not and do not reach these assignments of error.

tution at Pittsburgh, was stabbed to death in the south yard of the prison. The incident was witnessed by two prison guards who identified Clifford Futch, also an inmate, as the assailant. The testimony of these two prison guards provided the crucial evidence for the prosecution's case against Futch. The thrust of Futch's defense was that he was not in the south yard at the time the stabbing took place and that the identification by the guards was erroneous. The defense put forward the testimony of a number of other inmates regarding the movements, whereabouts, and physical description of Futch at or about the time of the incident.[2]

Futch contends that he was denied the opportunity of having an impartial jury by the trial court's refusal to allow the following proposed questions for the voir dire of prospective jurors:

"(1) Would the fact that all of Mr. Futch's material witnesses are incarcerated at Western Penitentiary make their testimony less believable than any witness that the Commonwealth may produce who are not prisoners?

"(2) Do you have any hostile feelings toward people who are in prison?

"(3) Would you give more credence to the testimony of a prison guard than you would to a prisoner, simply because he is a prison guard?

"(4) Would you give more credence to the testimony of a white person over that of a black person simply because he is a white person?"

The singular purpose of voir dire examination is to secure a competent, fair, impartial and unprejudiced jury. In pursuit of that objective, the right of a litigant to inquire into bias or any other subject which

---

2. While Futch does not question the sufficiency of the evidence to support the verdict, an independent examination of the record indicates that sufficient evidence exists to sustain the conviction.

bears on the impartiality of a prospective juror has been generally recognized. Nevertheless, the scope of voir dire examination rests in the sound discretion of the trial judge and his decisions will not be reversed unless there is an abuse of that discretion. *Commonwealth v. Brown,* 464 Pa. 625, 347 A.2d 716, 717 (1975); *Commonwealth v. Segers,* 460 Pa. 149, 156, 331 A.2d 462, 466 (1975); *Commonwealth v. Dukes,* 460 Pa. 180, 186–187, 331 A.2d 478, 481 (1975); *Commonwealth v. Johnson,* 452 Pa. 130, 134–135, 305 A.2d 5, 7 (1973); *Commonwealth v. Biebighauser,* 450 Pa. 336, 346, 300 A.2d 70, 75 (1973); *Commonwealth v. Lopinson,* 427 Pa. 284, 297–298, 234 A.2d 552, 560–561 (1967); *Commonwealth v. McGrew,* 375 Pa. 518, 525–526, 100 A.2d 467, 470 (1953).

■ We can dismiss at the outset any argument that the refusal to allow question No. 4 was error. During voir dire two other questions specifically directed at racial prejudice were permitted which were more than adequate to elicit any possible racial bias.[3]

The denial of permission to ask the remaining interrogatories raises more difficult questions. Question No. 3 focuses on a prospective juror's predilections in judging the credibility of prison guards who testify in court proceedings, while question No. 1 is designed to elicit possible bias or prejudice in judging the credibility of prison inmates as court witnesses.

In *Commonwealth v. Brown,* supra, we held that a black defendant was denied due process of law in his trial for the rape of a white female when the trial court refused to ask or permit the following question of prospective jurors. "Would you, or do you, get upset or take special note when you see a white girl and a black man walking together; talking together; holding

---

**3.** The questions were the following:
"20. Have you had any experience with black persons that might impair your ability to be fair and impartial?
"21. Will the fact that the defendant is a black person affect in any way your judgment in this case?"

hands?" The Court ruled that this question was proper because it was directed at a relevant area of inquiry and "designed to elicit the prospective jurors' bias or prejudice concerning black-white relationships which, if shown, would subject them to disqualification." 464 Pa. at 628, 347 A.2d at 717–718.[4]

Our decision in *Commonwealth v. Brown,* supra, was tied to the facts of that case and we must likewise evaluate the correctness of the challenged rulings instantly in the light of the facts presented. As noted earlier, the crucial evidence against Futch in this case was provided by two prison guards who were eyewitnesses. In addition, the Commonwealth supplemented this evidence with the testimony of five other prison guards who supplied foundation evidence and corroborative details regarding the whereabouts and appearance of Futch at the time of the incident and the discovery of the victim's body, as well as the finding of a knife (with blood stains of a type matching the victim's) in a trash can along the route Futch had traveled after he was seen striking the victim.

4. In *Ristaino v. Ross,* 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976), the United States Supreme Court stated that "[t]he Constitution does not always entitle a defendant to have questions posed during voir dire especially directed to matters that conceivably might prejudice venireman against him. . . . [T]he State's obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant. . . ." 424 U.S. at 594, 96 S.Ct. at 1020–1021 (footnote omitted). Utilizing a factual analysis the Court held that the mere fact that the case involved a black defendant and a white victim did not suggest a significant likelihood that racial prejudice might infect the trial, and therefore the need to question prospective jurors specifically about racial prejudice did not rise to constitutional dimension.

In light of *Ristaino v. Ross,* supra, it is arguable that the result in *Commonwealth v. Brown,* supra, is not mandated by the federal Constitution. However, to the extent that *Commonwealth v. Brown,* supra, was grounded in state law, it remains sound authority. The United States Supreme Court has made clear that the States are free to allow or require questions not demanded by the Constitution. *Ristaino v. Ross,* 424 U.S. at 597, 96 S.Ct. at 1022, n. 9. In any event, both cases were based on factual analyses, although each reflects a different degree to sensitivity to racial issues.

The defense testimony, as noted earlier, was supplied by prison inmates.

*Brown v. United States,* 119 U.S.App.D.C. 203, 338 F. 2d 543 (1964), held that it was reversible error to deny the defendant's request to inquire on voir dire whether prospective jurors would give " 'greater credence to the testimony of a law enforcement officer merely because he is an officer as compared to any other witness?' " 338 F.2d at 544. That case involved a prosecution for assault with intent to commit robbery and the testimony of two military police officers, along with the supplemental testimony of two metropolitan police officers, constituted the prosecution's case. Judge (now Chief Justice) Burger wrote:

> "[W]hen important testimony is anticipated from certain categories of witnesses, whose official or semi-official status is such that a juror might reasonably be more, or less, inclined to credit their testimony, a query as to whether a juror would have such an inclination is not only appropriate but should be given if requested. Failure to make appropriate inquiry, when requested, does not necessarily require reversal; the issue turns on the degree of impact which the testimony in question would be likely to have had on the jury and what part such testimony played in the case as a whole." 338 F.2d at 545.

Accord, *Sellers v. United States,* 106 U.S.App.D.C. 209, 271 F.2d 475 (1959). See and compare *Chavez v. United States,* 258 F.2d 816, 819 (10 Cir. 1958) (dictum).

The crux of the case at bar is the credibility of the prison guards' testimony contrasted to the credibility of the prison inmates' testimony. On these facts a juror who would believe the testimony of a prison guard simply because of his official status would be subject to disqualification for cause.[5] Appellant has a right to probe

---

5. A close reading of question No. 3 shows that it is directed only at a predilection to place more credence in the testimony of a prison guard *simply because of his official status.*

for this bias since it bears on a juror's objectivity with respect to the most critical aspect of the case. See *United States v. Napoleone*, 349 F.2d 350 (3d Cir. 1965). The Commonwealth contends that the voir dire examination included questions that adequately covered the area of inquiry that question No. 3 sought to explore.[6] A close reading of those questions, however, discloses that none focuses upon the potential bias aimed at by No. 3, i. e., the predilection of a prospective juror to credit the testimony of a prison guard simply because of the guard's official status. We hold, therefore, that it was prejudicial not to permit question No. 3. Contra, *United States v. Gassaway*, 456 F.2d 624 (5th Cir. 1972).

 The rationale applied to question No. 3 applies to question No. 1 as well. Although we have found no authority requiring such a question, we are of the opinion that there is no significant distinction between law enforcement officers as court witnesses on the one hand and prison inmates on the other. The latter classification arouses feelings that are just as capable of interfering with a jury's capacity to render a fair and impartial verdict as does the former. The rationale underlying *Brown v. United States*, supra, is that although it is likely that jurors might believe testimony of law enforcement officials solely by virtue of the group's official status, it is unreasonable for them to do so because official status is no guarantee of trustworthiness. With regard to prison inmates, it is just as likely that jurors might attach less credit to their testimony, and it is just as un-

6. The voir dire examination included the following questions:
"11. Do you know of any reason why, if chosen, you could not serve as a juror who would be fair and impartial? If so, specify ──────────.
 * * *
"14. Are you personally acquainted with any member of the staff at the State Correctional Institution at Pittsburgh, commonly known as the Western Penitentiary?
"15. Would any prior acquaintance you might have with police or prison staff or employes prejudice you in any way considering this case? If so, explain ──────────."

reasonable for them to do so because prior criminal activity is not necessarily a reliable indicator of untrustworthiness.[7] On the facts of this case a juror who would disbelieve the testimony of a prison inmate simply because of his status as a prison inmate would be subject to disqualification for cause. Since the voir dire examination included no questions that even arguably explored this area of potential bias, we are of the opinion that question No. 1 should also have been allowed.

■ Finally, we note that although question No. 2 is aimed at the same general target as question No. 1, the latter is tied more closely to the facts of this case. We are of the opinion that question No. 1 was more than adequate to elicit any possible bias or prejudice against prison inmates that might possibly infect this case.

The judgment of sentence is reversed and a new trial is ordered.

NIX, J., took no part in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice (concurring).

I join in the opinion of the majority insofar as it deals with the trial court's refusal to allow proposed questions No. 1 and No. 3 to be used for the voir dire of prospective jurors. Because the trial court's rejection of these questions requires that a new trial be granted, I would not decide whether question No. 2 or question No. 4 should have been allowed.

7. In Pennsylvania a witness may be impeached by showing a prior conviction only if the crime involved dishonesty or false statement. *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976); *Commonwealth v. Katchmer*, 453 Pa. 461, 464, 309 A.2d 591, 593 (1973).